## Johnson, Administratrix v. Mobile & Ohio Railroad Company, et al.

(Decided November 30, 1917.)

### Appeal from Ballard Circuit Court.

1. Negligence—Presumption.—Negligence can not be presumed, but must be proven, and if the plaintiff only proves such facts and circumstances, as show that an injury might have equally resulted from several different causes, only one of which can be attributed to the defendant's negligence, his case has failed.

2. Negligence—Proximate Cause.—The negligence proven must, also, be shown to be the direct and proximate cause of the injury, before any liability is incurred for the injury.

J. B. WICKLIFFE and W. A. ANDERSON for appellant.

JOHN E. KANE, E. T. BULLOCK and S. R. PRINCE for appellee, Mobile & Ohio R. Co.

TRABUE, DOOLAN & COX for appellee, Illinois Central R. Co.

WHEELER & HUGHES for appellee, Illinois Central R. Co.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The Chicago, St. Louis and New Orleans Railroad Company owns a line of railroad which extends through the town of Wickliffe, in Ballard county. Through the town of Wickliffe the road has two tracks, which are parallel, but the evidence entirely fails to show, what the distance is between the tracks, either, at the point, where the tragedy, which is the subject of this action, occurred, or at any other place, but, presumably, the tracks are within a few feet of each other. The course of the tracks, through the town of Wickliffe, is a north to south direction. The trains, which pass over the road from the south to the north, travel upon the track, which is nearest to the east, and this track is called the "north-bound" track, while the trains, which travel from the north to the south, pass over the track, which is nearest to the west, and this track is called the "south-bound" track. Court street, in Wickliffe, runs in a direction from east to west, and crosses the railroad tracks and leads from the principal portion of the town to the Mississippi river, which is beyond the railroad tracks from the principal business and residence portion of the town. On the north side of Court street, where it crosses the railroad tracks, a footway or sidewalk extends along the

street and over the tracks for the use of the foot passengers in traveling the street.  The town contains a population of seven to eight hundred persons.  On the 23rd day of December, 1914, at about 6:20 p. m., James Johnson, who was about fifty years of age, was sent by his employer to deliver a rug to a house, which is on the west side of the railroad tracks, and between them and the river, and near the railroad tracks, but it is impossible to gather from the evidence, whether the location of the house was to the north or to the south of the intersection of Court street with the railroad tracks.  One witness deposes, that the tracks are on an ascending grade from Court street toward the south, while another testifies that the grade is an ascending one from Court street, both, toward the north and the south.  The deceased went toward the west, along Court street, with the rug, and when he arrived at the tracks, the witness says, that "he went up the railroad to a brick building that stands out from the depot down there."  Shortly after deceased crossed the railroad tracks, he returned to or near to the footway over the railroad tracks, described above, and just at the time, a freight train, which was operated by the Illinois Central Railroad Company passed over Court street on the "north-bound" track, at a speed of seven to eight miles per hour.

It seems, that Johnson was about the foot crossing, between the two tracks, when, about the time, that the rear end of the "north-bound" train was passing over Court street, an engine, with a caboose attached, passed over the "south-bound" track, at a speed of from twenty to twenty-five miles per hour, and passed over Court street going toward the south, at the same time, that the rear end of the freight train was passing over the crossing, going toward the north.  When the trains had passed, the body of Johnson was discovered, lying between the two tracks, about one and one-half feet from the footway over the tracks, and with his head about eighteen inches from the east rail of the "south-bound" track. His body lay in a direction from southeast to northwest, with his head toward the latter direction.  A cut was upon the head of the body, but upon what portion of the head the evidence does not disclose.  The left leg was broken, and some of the ribs, upon one side or the other of his body, were, also, broken.  The body was lifeless, when discovered, though yet warm.  The hour of his death was after nightfall, but there was a street light upon each side of Court street, at its intersection

with the tracks, and four of such lights were in front of the depot, which was on the east side of the railroad tracks and from seventy-five to one hundred feet north of the crossing, but the evidence does not disclose anything, by which it could be determined what amount of light existed over the crossing.

This action was instituted by the administratrix of decedent against the appellees, Mobile & Ohio Railroad Company, and Illinois Central Railroad Company, to recover, of them, the damages, which his estate suffered from the destruction of his life. The petition contains an averment, that the Illinois Central Railroad Company operates its trains over the road as a lessee of the Chicago, St. Louis and New Orleans Railroad Company, and that the Mobile & Ohio Railroad Company operates its trains over the road under authority granted it, by the Illinois Central Railroad Company. This averment was not denied by the Mobile & Ohio Railroad Company, but the Illinois Central Railroad Company denied, by an amended answer, that the Mobile & Ohio Railroad Company used the road under any authority or permission granted by it. Four specific acts of negligence were charged in the petition, and it was averred that each of the appellees was guilty of these acts of negligence. They were as follows:

First: The servants of appellants, who were operating the trains, operated them at such a dangerous rate of speed, at the time and place, at which decedent was killed, that he was unable to avoid them.

Second: They did not give warnings or sufficient warnings of the approach of the trains to the crossing to enable decedent to avoid them and keep out of the way.

Third: They approached the crossing without keeping the trains under proper control, so as to avoid injury to one upon or near to the tracks at the crossing.

Fourth: They were not keeping a lookout.

These averments of negligence were denied by each of the appellees, by a separate answer.

At the conclusion of the evidence offered by appellant, the court sustained the motion of appellees to direct a verdict in favor of each of them, and a judgment was rendered upon the verdict, dismissing the petition. The appellant's motion for a new trial was overruled, and she has appealed, and the only question for consideration is: Was there any evidence of actionable negligence upon the part of either of the appellees?

Several witnesses deposed to the passing of the trains and the finding of decedent's body and the physical facts surrounding it, but, none of them ever saw decedent until his lifeless body was found, except one, who testified that, when decedent went along Court street to the railroad crossing, "he went up the railroad to a brick building that stands out from the depot down there." The witness seems to have gone on to the river, and as he returned from the river he saw a train passing on the "north-bound" track, "and Jim (decedent) was coming down the track," and the last he saw of him, decedent was between the river and the train, which was going north, and at that time, another train came from the north, over the "south-bound" track, and came between the witness and decedent and cut off his view, so that, he saw decedent no more, until the trains had passed, when he saw his body lying, as heretofore described. When the witness observed these things, he was not asked nor does he state at what distance he was away.

There was not any evidence supporting the averment, that the Mobile & Ohio Railroad Company was operating its trains under authority from the Illinois Central Railroad Company, and the latter company having denied the averment, it could be liable, only, for its own negligence. The undisputed proof in reference to its train was, that it was moving at the rate of seven or eight miles an hour, and had given the proper warnings of its approach, and that, as it was passing, the decedent was walking or standing alongside of it, and there is no evidence to sustain the charge, that, those, in charge of it, were not keeping a proper lookout. Further, it seems that it is impossible that decedent could have lost his life by contact with this train, arising in any way from an act of those operating the train, and could have only come in contact with it by some unavoidable misadventure of his own.

It is not claimed, that the Mobile & Ohio Railroad Company could be made liable for any negligence of the Illinois Central Railroad Company, as the insistence is, that it was operated under authority from that company, but it would be liable for its own negligence. The proof amply shows, that the crossing was one in the streets of a town, and where it was the duty of those operating trains to maintain a lookout, to give sufficient warning of the trains' approach, and to approach with the trains under control, and if they failed to do any of these things and injuries resulted, of which such negligence was the

proximate cause, the railroad company is liable. The proof is, that the necessary signals of the train's approach were given by the ones operating the Mobile & Ohio train; that whistles were blown and the train bell was ringing, as it passed the depot, which was only seventy-five to one hundred feet from the crossing. The speed of the train, at such a place, was evidence of negligence, and it could be inferred, that a train, operated at such a speed, was not under sufficient control, and if it could be shown, that there was a causal connection between the speed of the train and the killing of decedent, the appellant's cause should have gone to the jury. It being the duty of those operating the train to maintain a lookout, and the proof showing, that if such lookout had been maintained, decedent could have been seen by them in time to have stopped the train and to have saved his life, actionable negligence, in that regard, could have been inferred, if there had been any evidence that decedent was, at the time he was killed, upon the "south-bound" track, over which the train was passing. The undisputed proof, however, shows that decedent was not upon the "south-bound" track, but was walking or standing on the street between tracks, as the train going north was passing him on one side and the one coming south passed him on the other and cut off the view of the witness. The decedent, not being upon the track or dangerously near thereto, so as to be in a place of danger from the passing train, it cannot be inferred that a lookout was not being maintained, from the fact that no attempt was made to stop the train. It could not be inferred, that the decedent's death resulted from the speed of the train or the failure to have it under control, if such was the fact, when the proof fails to show that he was upon the track or attempting to cross it, and could not escape, because of its dangerous speed. As decedent was at a place, where he was safe from contact with the train, regardless of its speed, it could not be inferred that his death resulted from its speed. Of course, it is unquestioned, that decedent lost his life by coming in contact with one or the other of the trains, but how, or in what manner, or with which train he came in contact, can only be conjectured.

A well-recognized and established principle, which applies to the law of the negligence, is, that negligence is never presumed. Contributory negligence is never presumed. Negligence must be proven directly, or such

facts must be proven as that negligence must be necessarily inferred from the existence of the facts proven. It must be shown, that the act of negligence was, also, the proximate cause of the injury. Negligence cannot be assumed nor inferred from the mere fact, that an injury was sustained. When the injury is proven, negligence may be inferred from the facts and circumstances, which surround it, if it can be reasonably inferred from them, that the negligence caused the injury. Where the evidence is equally consistent with the existence of negligence, as the proximate cause of the injury, and its non-existence, the plaintiff has failed in his case. If the evidence shows, that the injury may have resulted from one of several causes, but only one of these causes can be attributed to the defendant's negligence, the plaintiff has failed in his case, for the reasons above assigned. These views are supported by the following decisions of this court and many others, which are not here enumerated: Gayle's Admr. v. L. & N. R. R. Co., 163 Ky. 459; L. & N. R. R. Co. v. Wathen, 22 R. 82; C. & O. Ry. Co. v. Adkins, 167 Ky. 329; Woodburn v. Union Light, Heat & Power Co., 164 Ky. 33; Caldwell's Admr. v. C. & O. Ry. Co., 155 Ky. 609; L. & N. R. R. Co. v. Taylor's Admr., 169 Ky. 435; I. C. R. R. Co. v. Day, 163 Ky. 367; Hughes v. Cincinnati, etc., Railroad Co., 91 Ky. 526; C. & O. Ry. Co. v. Bagby, 155 Ky. 420; Stewart's Admr. v. N. C. & St. L. Ry. Co., 146 Ky. 129; Louisville, etc., v. Kaufman, etc., 105 Ky. 156; L. & N. R. R. Co. v. Hamburg-Bremen Fire Insurance Co., 152 Ky. 510. It is, also, a well-settled rule, that after admitting every fact shown by plaintiff's evidence to be true, as well as all reasonable inferences, which can be drawn from such facts, if the plaintiff has yet failed to establish his case, the court should not submit it to the jury. Miller v. Metropolitan Life Insurance Co., 28 R. 225; Southern Ry. Co. v. Goddard, 121 Ky. 577; Fugate v. City of Somerset, 97 Ky. 48; C. & O. Ry. Co. v. Bagby, 155 Ky. 423, and many others.

From the evidence, it appears, that decedent was not struck by the front of either of the trains, and the last any one saw of him, he was at a place, where he was secure from harm from either of them. If he remained at the place, between the trains, neither of them would come in contact with him. It could be conjectured from the location of the body, that he was struck by the Illinois Central train, as the head was to the northwest, and that the wound upon the head was made after he was thrown

into that location by the passing of the other train. If he was struck by the train on the "south-bound" track, it could be conjectured that he would have been thrown forward upon the track to some distance, and not immediately down, with his feet in the direction in which the train was moving, and his head to the point where he was struck. It could be conjectured, that, being between the two moving trains, he unwittingly and by his own act, fell into contact with one or the other of them, either from missing his footing or other cause. All of this, however, would be mere conjecture. Suffice it to say, that the death of decedent is not proven, by any direct evidence, nor are any facts proven, from which it can be inferred, that his death was proximately caused by any act of negligence, which is attributable to either of the appellees. It is, furthermore, as consistent to determine from the evidence, that his death was caused by coming in contact, solely, with one of the trains as with the other. Simply, it is impossible to do any more than conjecture as to the direct and proximate cause of his death, other than that his death was caused by coming in contact with one of the trains, but of which of the trains, or what caused him to come in contact with it, is mere speculation.

The judgment is therefore affirmed.