Amos **BARTLEY,** Administrator of the Estate of Larry Dean Bartley, Deceased, Appellant,

v.

Joe **CHILDERS,** Clyde **Childers,** Jr., and Clyde **Childers,** Sr., Appellees.

Court of Appeals of Kentucky.

Oct. 25, 1968.

Combs & Anderson, Pikeville, for appellant.

L. D. May, Pikeville, for appellees.

CULLEN, Commissioner.

With two companions, Larry Dean Bartley, 14 years of age, went swimming in a privately owned, commercially operated pool. There was a large crowd in the pool, estimated as being from 75 to 150 people. After a period of time during which Larry and his companions were separated from each other in the pool, the companions decided it was time to go home but upon looking for Larry were unable to find him. A lifeguard was notified of his disappearance and the pool was cleared, after which Larry's dead body was found in the bottom of the pool.

Larry's administrator sued the appellees, Joe Childers, Clyde Childers, Jr., and Clyde Childers, Sr., alleging that they were the owners and operators of the pool and that Larry's death was the result of their negligence in the operation of the pool. At the close of the plaintiff's evidence the trial court directed a verdict for the defendants, on the specific ground that any negligent acts or omissions which the plaintiff's evidence might be considered to have proved were not shown to have *caused* Larry's death. Judgment was entered dismissing the complaint, from which judgment the administrator has appealed.

The plaintiff's evidence undertook to establish negligence in the following respects: (1) There was only one lifeguard on duty, whereas according to the testimony of one of the defendants (taken as if on cross-examination) three lifeguards normally should have been on duty (the testifying

defendant said there were three on duty that day); (2) the pool was not cleared every 30 minutes for a safety check, as required by the defendants' own safety regulations; (3) horseplay was permitted in the water which would tend to impede observation of a drowning swimmer's danger; and (4) there was no rope across the pool to divide the shallow and deep ends.

The case is not argued on the question of whether there was sufficient proof of negligence, but on the issue of sufficiency of proof of causation. We shall confine our attention to that issue.

■ At the outset, the appellees maintain that there was no proof that Larry's death was due to drowning. However, the doctor who examined the body at the scene testified that the cause of death was "most likely" asphyxiation by drowning although there were a couple of other "possible" causes. In our opinion this was the equivalent of a statement by the doctor that the death "probably" was caused by drowning, which kind of statement we have held to constitute acceptable proof of cause of death. See Terry v. Associated Stone Co., Ky., 334 S.W.2d 926 (in which the doctor used both the words "likely" and "probably"); also see Rogers v. Sullivan, Ky., 410 S.W.2d 624.

In considering the question of whether there was sufficient proof to sustain a finding that the drowning was caused by the claimed negligence, our problem is to determine whether the proof in this case warranted an *inference* of causation or merely furnished a basis for speculation, surmise, guesswork or conjecture. As said in Beatrice Foods Company v. Chatham, Ky., 371 S.W.2d 17, the line between what is speculative proof and what is circumstantial or inferential proof is sometimes dim and uncertain.

■ In attempting to define the dim line this court sometimes has said that when the evidence is equally as consistent with

noncausation as with causation, an *inference* of causation is not warranted. See McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427; Johnson v. Mobile & O. R. Co., 178 Ky. 108, 198 S.W. 538. However, we think a better statement of the rule is found in Highway Transport Co. v. Daniel Baker Co., Ky., 398 S.W.2d 501, in the simple statement that "the claimant must introduce sufficient proof to tilt the balance from possibility to probability." An inference is simply "nothing more than a probable or natural explanation of facts * * * (which) arises from the commonly accepted experiences of mankind * *." 29 Am.Jur., 2d Evidence, sec. 161, p. 196.

The appellees argue that there is no basis for an inference that the claimed negligence of the appellees caused Larry *to get in a drowning position or situation.* However, in our opinion the significant question is whether there is a basis for an inference that the claimed negligence was a cause of Larry's *not being rescued or not being discovered in time to be resuscitated*—a cause of the drowning's completion.

■ It is among the duties of the proprietor of a public swimming pool to make reasonable provisions to protect bathers in case of accident; to rescue those apparently in danger; and to act promptly to institute a search for a missing bather. 86 C.J.S. Theaters & Shows § 42f, p. 736. The function of lifeguards is as much (and perhaps more) to rescue bathers in trouble and to revive those in a drowning condition as it is to keep bathers from getting in a drowning situation. Prevention of horseplay likewise has a dual purpose—to make it easier to discover bathers in danger as well as to keep them out of danger. Regulations for periodic clearances or bottom patrols of the pool are primarily for rescue and resuscitation purposes. And a divider rope may serve as a lifeline as well as a warning device.

■ So we have in the instant case the occurrence of an event (a death from

drowning) of the very kind which the care standards claimed to have been violated by the appellees (adequate lifeguards—no horseplay—periodic bottom patrols—divider rope) were designed to prevent. In our opinion this warrants an *inference,* as being a probable and natural explanation arising from common experiences of mankind, that the death was caused by the negligence.

Prosser says: "When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him, but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning." Prosser on Torts, 3rd Ed., Ch. 7, sec. 41, p. 246. See also Rovegno v. San Jose Knights of Columbus Hall, 108 Cal.App. 591, 291 P. 848.

We find an analogy in our case of Chesapeake and Ohio Railway Co. v. Biliter, Ky., 413 S.W.2d 894. There a freight train had fallen in a river as a result of a washout following an extended period of heavy rainfall. The railroad company's own safety regulations required the maintenance crews to carry on a continuous walking patrol of the tracks during heavy storms. This was not done. The railroad company argued that its failure in that regard could not be found to have been a cause of the accident because it was entirely possible that a patrol complying with the regulations would not have discovered the impending washout. This court held, however, that it was *reasonably inferable* that a patrol in accordance with the regulation would have resulted in discovery of the subsidence, and the railroad should not be absolved of its dereliction merely because *"maybe"* a performance of its duty would have been ineffectual.

It is our conclusion that the trial court erred in granting a directed verdict for the defendants on the ground of insufficient proof of causation.

The appellant asserts error also in the ruling of the trial court refusing to admit evidence of Larry's life expectancy. It appears that the reason given for the ruling was that Larry had not been a wage earner. The ruling was erroneous because the right to recover damages for impairment of future earning power is not dependent upon previous actual earning experience. See Spurlock v. Spurlock, Ky., 349 S.W.2d 696.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

EDWARD P. HILL, MILLIKEN, PALMORE, STEINFELD and WILLIAMS, JJ., concur.

OSBORNE, J., not sitting.