John R. COX, Administrator of the Estate of Charles Russell Cox, Deceased, Appellant,

v.

Wanda BARNES et al., Appellees.

Court of Appeals of Kentucky.

June 25, 1971.

**62**

———◆———

James E. Story, Eddyville, Marvin C. Prince, Boyce G. Clayton, Benton, for appellant.

Waller, Threlkeld & Whitlow, Paducah, for appellees.

STEINFELD, Judge.

Charles Russell Cox, an 18-year-old senior in the Fredonia High School, was a candidate for valedictorian of his class. He had at his disposal an automobile which his father had purchased for him and he frequently managed his father's feed mill business. He had reached the age of majority under the law of this state. KRS 2.015.

On May 5, 1969, Charles and approximately 30 other members of his graduating class went on an all-day outing to Kentucky Dam State Park. While swimming in Kentucky Lake Charles was drowned. His administrator sued Wanda Barnes, a teacher; Robert Hooks, the school athletic director and basketball coach (who was to serve as bus driver and lifeguard if there was swimming); and Riley Dennington, the school principal, claiming that their negligence resulted in the loss of life. Dennington was dismissed on a directed verdict and the jury found for the remaining two defendants. From a judgment dismissing the action the administrator appeals. We affirm.

On October 14, 1968, the Caldwell County School Board had resolved " * * * to discontinue school-sponsored senior trips." Witnesses testified that this order was intended to prohibit overnight trips and not a one-day outing. After the Superintendent of Schools told Principal Dennington that an "educational trip" was permissible he authorized Charles' class to go on the fatal outing.

Dennington attended a regular class meeting at the request of the students. When asked if swimming would be permitted he said he " * * * didn't know if the beach was open or not; and if they did go swimming they would have to furnish their own lifeguard." They selected Mr. Hooks an expert swimmer. Appellant concedes that Dennington also told Mrs. Barnes and Mr. Hooks that swimming would be permitted if a lifeguard was furnished.

The students in company of Mrs. Barnes, her husband, Reverend Barnes, and Mr. Hooks first had lunch in a restaurant about one-half mile from the beach area. They proceeded by bus to the beach which was not officially open. Signs at various places said that no lifeguards were on duty and others read "Swim at your own risk." Members of the class engaged in different types of activities, some in horseplay and others went into the water. Five of the boys swam out to a diving tank about 35 or 40 yards from the shore. On the tank was a sign that read "off limits". Meanwhile, Rev. and Mrs. Barnes and Mr. Hooks, none of whom changed to swimming clothes, were at various places along the beach. There was no lifesaving equipment present, although they had brought along a rope which had been misplaced.

Allen Winters, Dwain Phelps and Charles stayed in shallow water declining an invitation to join the boys who had

gone to the diving tank, but after those three engaged in some horseplay they started swimming toward the tank. Although Charles still had on trousers he appeared to be swimming well but when he was within about ten feet of the tank he grabbed one of the boys and pulled him under and it was then apparent that he was in distress. The boys on the tank aided Winters and Phelps to the tank. They tried to get Charles there but he slipped away from them, disappeared under the water and did not reappear.

About the time the three boys neared the tank a boat approached the area and the boys on the tank signalled to it to help. Mrs. Barnes, not realizing that assistance was needed, waived the boat away from the swimmers as she considered it improper for the boat to be in the bathing area. The boat moved away but apparently realizing that aid was sorely needed returned too late to be of assistance. About that same time Mr. Hooks removed some of his clothing, swam out to the tank and dove many times as did others but they were not able to locate Charles in time to save his life. Later his body was found about five feet from the tank.

■ The appellant claims that it was error to sustain a motion for a directed verdict in favor of Principal Dennington but on the contrary a directed verdict should have gone against him because of the alleged negligence. The administrator relies on KRS 158.110 which provides: " * * * the Boards of Education shall adopt such rules and regulations as will insure the comfort, health and safety of the children who are transported, consistent with the rules and regulations of the State Board of Education dealing with the transportation of pupils." We fail to see that this statute is applicable in the circumstances. Transportation was unrelated to Charles' death.

■ Appellant charges that the harm was foreseeable and relies on Titus v. Lindberg, 49 N.J. 66, 228 A.2d 65 (1967), which held that a principal has the duty to supervise the school grounds and upon failure to do so could be held liable. Also cited is Cianci v. Board of Education, 18 A. D.2d 930, 238 N.Y.S.2d 547 (1963), holding that a principal may be held liable for negligence in fulfilling his duty. We have said when a principal of a school is personally negligent he may be held responsible for injuries resulting therefrom. Whitt v. Reed, Ky., 239 S.W.2d 489 (1951). It appears to us that Dennington had fulfilled his duty when he gave appropriate instructions and specified certain conditions under which the trip might be taken. He was guilty of no negligence. A high school superintendent was held not to have been negligent and thereby responsible when a student died as a result of electrical shock during his initiation into a school organization. The ceremony was held in the school gymnasium, the superintendent not being present. He had previously determined that the athletic coach was to be present at the ceremony and having so ascertained permitted use of the gymnasium. DeGooyer v. Harkness, 70 S. D. 26, 13 N.W.2d 815 (1944). The duties of a principal of a school are manifold and he cannot be at all places at all times. He is not responsible for the failure of his staff to fulfill all their duties. · Luce v. Board of Education, 2 A.D.2d 502, 157 N. Y.S.2d 123 (1956). We fail to perceive any negligence on his part and concur in the action of the trial court in dismissing the claim against Dennington.

■ As to Mrs. Barnes and Mr. Hooks the appellant claims that they violated the order of the board and the oral instructions of the principal. He notes that a month or so before the trip Mrs. Barnes cautioned the students that swimming was a dangerous sport and that Mr. Morris, the regular senior sponsor, declined to accompany the group because he considered the trip a dangerous one. The administrator lists the derelictions of Mrs. Barnes and Mr. Hooks as follows: Permitting the students to enter the water within an hour of consuming a big meal; violating the signs on the beach; failure to check water con-

ditions; permitting swimming in their street clothes and in very cold water; failure to have lifesaving equipment available; failure to ascend the lifesaving stands for adequate observation of the swimming area and failure to properly observe activities of the students and to restrain them.

A motion was made by the plaintiff below for a directed verdict against Mrs. Barnes and Mr. Hooks who in turn made a motion that they be granted a directed verdict or dismissal. These motions were overruled and the jury was instructed generally and with respect to the duties of Mrs. Barnes, Mr. Hooks and Charles. The administrator contends that a last clear chance instruction also should have been given. He argues that the teachers assumed an obligation to protect the students and that when they engaged in a perilous activity the instructors failed in their obligation. He contends that Mr. Hooks should have been prepared for an emergency both personally and with lifesaving equipment. In support of his argument the administrator refers us to Bolus v. Martin L. Adams & Son, Ky., 438 S.W.2d 79 (1969), in which we said:

> "The basic duty of a defendant, under the last-clear-chance doctrine is to exercise ordinary care to avoid injuring the plaintiff after he has discovered or should have discovered the latter's peril. (citing cases) The test is: What would an ordinarily prudent man have done under the circumstances?"

He also relies on 38 Am.Jur. 671, Negligence, section 24 and pages 713 and 714 Negligence, section 62.

The appellees respond:

> "In Appellant's brief it is contended that the trial court should have given a last clear chance instruction. The humanitarian doctrine of last clear chance is not applicable here. There was no instrumentality in the hands of appellees which brought injury to Charles Cox as in an automobile-pedestrian case. Appellees brought no force to bear on Charles Cox after his peril was discovered or discoverable. Appellant's argument on this point at most refers to alleged antecedent negligence which plays no part in last clear chance. Riley v. Hornbuckle, Ky., 366 S.W.2d 304 (1963); Whitesides v. Reed, Ky., 306 S.W.2d 249 (1957)."

It appears to us that there was no evidence whatsoever that after the peril in which Charles placed himself was discovered or was discoverable Mr. Hooks or Mrs. Barnes had time to do anything to have averted the harm which befell him. Doll v. Louisville Ry. Co., 138 Ky. 486, 128 S.W. 344 (1910). See also section 479 Restatement of Torts 2d, page 534. The trial court did not err in declining to give a last clear chance instruction to the jury.

■ It is our opinion that under the evidence in this case the administrator was not entitled to a directed verdict because the jury was entitled to believe that Charles, being an 18-year-old adult was guilty of contributory negligence, and since the jury found in favor of Mrs. Barnes and Mr. Hooks we need not determine whether they were entitled to a directed verdict.

The judgment is affirmed.

All concur.