Robert F. GRIMES, Administrator of Laura McCoy Grimes, a Deceased minor, and Robert F. Grimes and Helen Grimes, surviving parents of Laura McCoy Grimes a Deceased minor, Appellants,

v.

**Gordon HETTINGER, Appellee.**

Court of Appeals of Kentucky.

Jan. 27, 1978.

Rehearing Denied March 31, 1978.

Discretionary Review Denied June 27, 1978.

Bill V. Seiller, Ewen, MacKenzie & Peden, P. S. C., Louisville, for appellants.

Thomas M. Crawford, Louisville, for appellee.

Before HOGGE, PARK and REYNOLDS, JJ.

PARK, Judge.

This appeal raises the question of the liability of the owner of a private residential swimming pool for the death of a minor social guest. The appellants are the parents and personal representative of Laura McCoy Grimes, who died in a swimming pool adjacent to the residence of defendant-appellee, Gordon Hettinger. The appellants appeal from a summary judgment granted by the trial court dismissing the complaint.

## FACTS

The underlying facts are not in dispute. Laura Grimes was invited to a combined slumber party and swimming party at the Hettinger home by Mr. and Mrs. Hettinger's daughter, Linda. Including both Laura and Linda, eleven girls attended the party. The girls arrived at the Hettinger home on Friday evening, May 23, 1975. On Friday evening, the girls spent several hours swimming in the pool without incident. The record establishes that Laura was an intelligent twelve year old girl who was a proficient swimmer and diver with substantial training and experience. Laura had the opportunity to become thoroughly familiar with the layout of the Hettinger swimming pool on Friday evening.

The girls resumed swimming in the pool around eight o'clock Saturday morning. Mrs. Hettinger was not present, having taken one of the younger Hettinger boys to a tee-ball game. As Mr. Hettinger had a business appointment shortly after 9:00 A.M., he awakened his son, Terry, who was fourteen years of age, and gave him instructions to watch the girls. Before leaving, Mrs. Hettinger awakened her daughter Kathy, who was almost sixteen years old. Both parents told Kathy to watch the girls. Before leaving for his business appointment, Mr. Hettinger either told the girls to

leave the pool or told them to leave the pool when requested to do so by Kathy.

Approximately five minutes after Mr. Hettinger left the residence, Kathy told the girls to leave the pool. When the girls had left the pool, they reported that Laura was missing. Kathy, Terry, and most of the other girls looked for Laura inside the Hettinger residence. The search of the house had continued for five minutes when two of the girls dove into the pool and found Laura's body on the bottom in the deepest portion of the pool near the drain. The two girls brought Laura to the surface and were assisted by Kathy and Terry Hettinger in bringing Laura out of the pool. There were no signs of breathing or heartbeat. The local rescue squad was notified immediately. A neighbor was summoned who administered mouth-to-mouth resuscitation. However, all efforts to revive Laura were futile. No autopsy was performed. However, Mrs. Grimes noted a bump on Laura's forehead at the hairline. There was also some indication that Laura had superficial scratches in the area of her nose.

### ISSUES

Respecting Mr. Hettinger's liability for Laura's death, three questions are raised: (1) whether a dangerous condition of the swimming pool was a substantial factor in causing Laura's death; (2) whether activities conducted in and around the swimming pool were a substantial factor in causing her death; and (3) whether there was a duty to rescue Laura.

### CONDITION OF THE POOL

■ Whether Mr. Hettinger was under a duty to Laura because of the condition of the swimming pool depends upon two factors. First, did a condition exist which Mr. Hettinger realized, or should have realized, would involve an unreasonable risk of death or serious bodily harm to Laura? Second, would a child of Laura's age and experience reasonably be expected to understand and appreciate the risk of any dangerous conditions in the swimming pool? It is immaterial whether Laura was an invitee or merely a licensee. *Gross v. Bloom*, Ky., 411 S.W.2d 326, 20 A.L.R.3d 1123 (1967); *Louisville Trust Company v. Nutting*, Ky., 437 S.W.2d 484 (1968); *Johnson v. Simpson County Seed & Implement Co.*, Ky., 438 S.W.2d 340 (1969). In these three cases, the court adopted the rule set forth in the *Restatement (Second) of Torts* § 339, with respect to artificial conditions dangerous to trespassing children. The protection afforded trespassing children under section 339 is also extended to children who are licensees and invitees. *Restatement (Second) of Torts* § 343B.

■ Taking into consideration Laura's age and her swimming experience and skill, the existence of a swimming pool would not itself impose any duty on Mr. Hettinger to warn or protect Laura. Swimming pools do not present a special danger involving an unreasonable risk of death or serious bodily harm, and the hazards of water are generally appreciated even by children of tender years. See *Hanners v. City of Ashland*, Ky., 331 S.W.2d 729, 730 (1959). We are not dealing with a child who is too young to appreciate the dangers inherent in a swimming pool or other body of water. Laura was an experienced swimmer fully capable of understanding the risks involved in swimming. See *Restatement (Second) of Torts* § 339, Comment *j*, illustrations 6 & 7.[1] The appellants suggest that the Hettinger swimming pool presented an unreasonable

---

1. Illustrations:

6. A has on his land a small artificial pond in which, to A's knowledge, children of the neighborhood frequently trespass and swim A takes no precautions of any kind. B, a boy ten years old who cannot swim, trespasses on A's land, enters the pond, and is drowned. A is not liable to B.

7. A has on his land a small artificial pond full of goldfish. A's land adjoins a nursery in which children from two to five years of age are left by their parents for the day, and such children are, as A knows, in the habit of trespassing on A's land and going near the pond. A could easily prevent this by closing and locking his gate. A does not do so. B, a child three years of age, trespasses, enters the pond to catch goldfish, and is drowned. A is subject to liability for the death of B.

risk of danger because of the presence of a sliding board and because of the cloudy condition of the water on the date of Laura's death.

■ The appellants claim that there is a genuine issue whether the water was too shallow for safety at the end of the slide. The only evidence in the record with respect to the slide is contained in the deposition of Mr. Hettinger who actually installed the swimming pool and accessories. He testified that the end of the sliding board was located "just past the shallow end into five foot of water." There is nothing in the record to suggest that the placement of the slide involved any unreasonable risk or danger. According to Mr. Hettinger, the manufacturer stated the slide was safe so long as there was three feet of water or more. The appellants cite the dissenting opinion of a member of the Consumer Product Safety Commission rendered December 9, 1975, long after the accident. However, this dissenting opinion does no more than argue that sliding boards should not be located in shallow water. There is nothing in the record indicating that five feet of water was too shallow for the Hettinger sliding board or that there was any danger which Laura could not be expected to appreciate. Mr. Hettinger was under no duty to warn Laura concerning the sliding board.

With respect to the clarity of the water in the pool, Mr. Hettinger testified that he vacuumed the pool and added chlorine to the water Thursday evening before the party. According to Hettinger's deposition, the addition of chlorine tends to have a cloudy effect on the water for approximately twenty-four hours. For a time Friday evening, there was a wind and rain storm. Some leaves were blown into the pool, and the rain also tended to have a cloudy effect on the water in the pool. Because Laura's body was not seen until the girls dived into the pool to look for her, the appellants argue that an issue was raised that the water was dangerously unclear. There was substantial evidence in the record that did indicate that there was nothing unusual about the clarity of the water in the pool

and that a person swimming along the bottom of the pool could be seen by a person standing at the side of the pool.

■ Assuming that the clarity of the water did constitute a dangerous condition, this condition was as evident to Laura as it was to Mr. Hettinger. He was under no duty to warn Laura of a condition which was readily apparent. If ordinary care would have required Mr. Hettinger to bar the girls from swimming in the pool, then it would have been contributory negligence on the part of Laura to swim in the pool. The record establishes that she was fully aware of the danger inherent in swimming and diving in unclear water. On the other hand, if it was not contributory negligence for Laura to swim in the pool, there was no negligence on the part of Mr. Hettinger in permitting the girls to swim in the pool on Saturday morning. See *Jones v. Winn-Dixie of Louisville*, Ky., 458 S.W.2d 767, 770 (1970); *Shelanie v. National Fireworks Assn.*, Ky., 487 S.W.2d 921 (1972); *Meyer v. Smith*, Ky., 428 S.W.2d 612 (1968).

For the foregoing reasons, we conclude that no triable issue was raised by the record relating to the condition of the swimming pool.

### ACTIVITIES IN POOL

The second basis for liability of Hettinger relates to the activities in and around the swimming pool. Even though the condition of the pool itself did not present a danger which Laura would not have understood or appreciated, the activities of ten other twelve year old girls swimming and diving in the pool may have presented additional risks which would not have been present had Laura been swimming alone. In *Hardin v. Harris*, Ky., 507 S.W.2d 172, 174–75 (1974), the court held that the possesser of land had a duty to exercise ordinary care in conducting his activities to avoid injury to children on the premises. In this case, we are not concerned with Mr. Hettinger's activities in and around the swimming pool. The question to be determined is the nature and extent of any duty on the part of Mr. Hettinger to supervise the activities of Laura and the other ten girls.

The appellants argue that Mr. Hettinger, "as the adult in charge," was under a duty to observe those rules of water safety reasonably observed by prudent persons in control of a swimming pool including reasonable opportunities to rescue a swimmer in distress. The appellants point out that Mr. Hettinger did not maintain a continuous watch over the girls before he left for his business appointment. He spent most of the time in his business office located on the ground floor of his home from which he could not see the pool. Periodically, Mr. Hettinger would come out of the office to check on the girls. The appellants point out that Mr. Hettinger did not institute a buddy system among the girls and that a head count was never taken while the girls were swimming.

In support of the argument that Mr. Hettinger was negligent in failing to provide lifeguard services, the appellants rely upon the decision in *Bartley v. Childers*, Ky., 433 S.W.2d 130 (1968). In that case, the court discussed the duties of the operator of a *commercial* swimming pool open to the public. The court stated:

> It is among the duties of the proprietor of a public swimming pool to make reasonable provisions to protect bathers in case of accident; to rescue those apparently in danger; and to act promptly to institute a search for a missing bather. 86 C.J.S. Theaters & Shows § 42 f., p. 736. The function of lifeguards is as much (and perhaps more) to rescue bathers in trouble and to revive those in a drowning condition as it is to keep bathers from getting in a drowning situation. Prevention of horseplay likewise has a dual purpose—to make it easier to discover bathers in danger as well as to keep them out of danger. Regulations for periodic clearances and bottom patrols of the pool are primarily for rescue and resuscitation purposes. And a divider rope may serve as a lifeline as well as a warning device.

433 S.W.2d at 132. A similar duty is imposed upon a municipality operating a public swimming pool. *Stillwell v. City of Louisville*, Ky., 455 S.W.2d 56 (1970). The same duty is not imposed upon the owner of a private residential swimming pool.

Mr. Hettinger was under a duty to control the conduct of the girls to prevent an unreasonable risk of harm to any of them. In the *Restatement (Second) of Torts* § 318, the duty of an owner of land to control the conduct of a licensee is stated as follows:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if the actor
>
> (a) knows or has reason to know that he has the ability to control the third person and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

Under section 318, the owner of a residential swimming pool was held to owe a duty to control the boisterous conduct of two guests which involved unreasonable risk of bodily harm to other guests. *Mangione v. Dimino*, 39 A.D.2d 128, 332 N.Y.S.2d 683 (1972). See also *Coleman v. Baker*, Ky., 382 S.W.2d 843, 848–49 (1964), in which the owner of a machine shop was held liable to a child licensee injured by the dangerous conduct of another child licensee.

The record in this case is completely devoid of any evidence or suggestion that the girls were engaged in horseplay, boisterous conduct, or any dangerous activity in and around the swimming pool. There is no suggestion that Laura's death is in any way attributable to the conduct of the other girls. If Mr. Hettinger had been at poolside at all times rather than in his office, the record does not indicate any necessity for Mr. Hettinger to have exercised control over the activities of the girls. Consequently, liability could not be imposed upon Hettinger for negligence in controlling the conduct of the girls in and around the swimming pool.

## DUTY TO RESCUE

■ Because this appeal is from the granting of a motion for summary judgment, we conclude that Laura's unexplained presence at the bottom of the swimming pool raises an inference that her death was the result of drowning. Consequently, we must determine whether Mr. Hettinger had an affirmative duty to exercise ordinary care to rescue Laura. Under the traditional common law rule, a person is under no duty to attempt to rescue another person who he knows to be in danger of drowning. See *Restatement (Second) of Torts* § 314, Comment *e*, Illustration 4. Decisions holding that there is no liability for permitting a person to drown have been described as "revolting to any moral sense." W. Prosser, *Law of Torts*, at 341 (4th Ed., 1971). Without regard to the merits of the general rule, a duty to aid one in peril has been imposed when a special relationship exists between the parties. Such a duty has been imposed upon a host to aid a social guest. For example, in *Hutchinson v. Dickie*, 162 F.2d 103 (6th Cir., 1947), the court held that the operator of a cabin cruiser had a duty to rescue his social guest who fell overboard through no fault of the owner. The court stated:

> We take no stock in appellant's contention that he was under no legal duty to rescue decedent. Dickie was an invited guest upon appellant's cruiser. When appellant heard the cry "Man Overboard" (an undisputed and relevant fact not referred to either in the findings or in the court's opinion) we think it was his duty to use reasonable care to rescue him. This was certainly a moral duty, universally recognized and acted upon. Dickie was drowning and appellant's cruiser was the only instrumentality by which he might be rescued.

162 F.2d at 106. See also *Tubbs v. Argus*, 140 Ind.App. 695, 225 N.E.2d 841 (1967).

■ When a duty to aid is imposed because of a special relationship between the parties, the defendant is not liable for failure to render aid unless he knows or has reason to know of the plaintiff's peril. Prosser, *op. cit.* 343; *Restatement (Second) of Torts* § 314A. There is nothing in the record to suggest that Mr. Hettinger ever was aware that Laura was in danger. Nor is there anything in the record to indicate that he was aware that Laura was missing, thereby giving him reason to believe that Laura was in danger.

■ When Mr. Hettinger left for his business appointment, he delegated the responsibility of looking after the girls to his daughter, Kathy, and son, Terry.[2] Subsequently, both Kathy and Terry were informed that Laura was missing and that the girls were making a search for her. Kathy and Terry went back into the house to look for Laura. Neither made any attempt to inspect the pool. Laura was discovered at the bottom of the pool by two classmates while Kathy and Terry Hettinger were still inside of the residence. According to Terry, the search for Laura had been going on for approximately five minutes before she was found. According to Mr. Hettinger and his three children, the water in the pool was clear. With all of the other girls out of the pool, Laura's body should have been visible from the side of the pool. She was attired in a bright red, white and blue one piece swimsuit.

■ Unlike the operator of the commercial pool in *Bartley v. Childers, supra*, the owner of a private residential swimming pool has no continuing duty to discover the peril of persons in danger of drowning. The duty of the private pool owner to rescue arises from actual knowledge of the peril or actual knowledge of facts which would cause a reasonable prudent person to assume that the guest was in peril. See *Restatement (Second) of Torts* § 12(2); cf. *Beasley v. Standard Paving & Engineering*

---

**2.** We need not reach the question whether Hettinger was under a duty to remain in the vicinity of the pool at all times. When he left for his business appointment he instructed Kathy and Terry to "watch" the girls. They were his agents for that purpose, and he would be liable for any negligence on their part. *Lashbrook v. Patten*, 62 Ky. (1 Duv.) 316 (1864).

*Co., Inc.*, Ky., 511 S.W.2d 667 (1974); *General Telephone Co. of Kentucky v. Yount*, Ky., 482 S.W.2d 567 (1972). In granting summary judgment, the trial judge concluded that it was logical for Kathy and Terry to look for Laura in the Hettinger home rather than the swimming pool because of the fact that Laura had played hide-and-go-seek with her friends in the past. We conclude that a jury could reasonably reach a different conclusion. A jury might believe that Kathy and Terry had reason to know that Laura was still in the pool and in danger of death. The difficult question is whether a prompt search of the pool would have resulted in the discovery of Laura in time to save her life. If at trial there were no evidence that there was sufficient time to rescue Laura after her peril should have been discovered, then a directed verdict against the appellants would be proper. See *Cox v. Barnes*, Ky., 469 S.W.2d 61 at 64 (1971).

On the motion for summary judgment, Hettinger as the movant had the burden of establishing the nonexistence of a genuine issue with respect to causation. *Conley v. Hall*, Ky., 395 S.W.2d 575, 580 (1965). There is evidence in the present record that Laura's absence was noted by some of the girls prior to the time that the girls got out of the pool. One of the girls went into the residence to look for Laura, and Kathy and Terry became aware that Laura was missing only when the girl returned to poolside. This was a prima facie showing that there was not sufficient time to rescue Laura after Kathy and Terry Hettinger became aware that Laura was missing. The burden was then upon the appellants to show in some way that there would be evidence at trial that there was a reasonable opportunity to rescue Laura after Kathy and Terry discovered she was missing. Because the appellants failed to establish that there was any such evidence, the trial court properly sustained the motion for summary judgment. *Neal v. Welker*, Ky., 426 S.W.2d 476 (1968).

RULING

The judgment of the circuit court is affirmed.

All concur.